UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA LYNN HARTSUFF,

    Plaintiff,

v.                                            Case No. 1:11-cv-674

                                                  Hon. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on December 17, 1970 (AR 112).[1] She earned a GED and had additional training in food service and sanitation (AR 189). She had previous employment as a factory worker (assembler and sorter), restaurant worker (driver, line server and manager), mail sorter and painter (AR 184). Plaintiff alleged a disability onset date of May 8, 2007 (AR 178). Plaintiff identified her disabling conditions as: thyroid; low calcium; and Graves' disease[2] (AR 183). On March 19, 2010, an Administrative Law Judge (ALJ), reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 14-23). This decision, which was later approved by the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Graves' disease is "a disorder of the thyroid usually of autoimmune etiology." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 482.

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 8, 2007 and had met the insured status requirements of the Social Security Act through June 30, 2010 (AR 16). At step two, the ALJ found that plaintiff suffered from severe impairments as follows: hypothyroidism; carpal tunnel syndrome; and polyneuropathy, undetermined etiology (AR 16). The ALJ also found that plaintiff's low back pain was a non-severe impairment within the meaning of the regulations (AR 16). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.02(B) (major dysfunction of a joint(s) (due to any cause)), 9.04 (hypoparathyroidism), and 11.14 (peripheral neuropathies) (AR 17).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and/or carry 10 pounds frequently and 20 pounds occasionally and stand/walk 2 hours in an eight-hour day. The claimant could not climb ladders, ropes, or scaffolds. The claimant could occasionally operate foot/leg controls, climb ramp [sic] and stairs, balance, stoop, kneel, crouch, or crawl. The claimant could frequently finger and handle objects bilaterally. The claimant needs to avoid all heights, moving machinery, vibration, and commercial driving. The claimant needs to avoid concentrated exposure to uneven or slippery terrain.

(AR 18). The ALJ further found that plaintiff could not perform any of her past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 22-23). Specifically, plaintiff could perform 2,300 jobs in the regional economy (defined as the lower peninsula of the state of Michigan) such as protective services worker (500 jobs), interviewer (600 jobs), and information clerk (1,200 jobs) (AR 22). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from May 8, 2007 through the date of the decision (March 19, 2010) (AR 23).

### III. ANALYSIS

Plaintiff has raised two issues on appeal.

### A. Did the Commissioner err in failing to consider the closed period from May 8, 2007 through April 4, 2009?

The ALJ determined that plaintiff's low back pain was not a severe impairment, because it does not limit her ability to perform work activities (AR 17). In reaching this determination, the ALJ noted: that in December 2007 plaintiff was diagnosed with back pain and lumbar and cervical strain after a vehicle collision; that her cervical and lumbar spine x-rays were negative; that she was diagnosed with lumbago and her doctor recommended physical therapy in March 2008; that she was referred to home exercise by April 2008; that in March 2009 she was diagnosed with lumbar spondylosis; that she was pleased with a treatment for the pain (a medial branch block) performed on April 1, 2009; and had no symptoms after she received a radiofrequency ablation on May 29, 2009 (AR 17).

The ALJ's failure to identify plaintiff's back condition as a severe impairment is not an error in and of itself. A "severe impairment" is defined as an impairment or combination of

5

impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.*

While plaintiff's back pain apparently ceased after the May 29, 2009 ablation procedure, the record reflects that her back condition may have met the requirement of Listing 11.14 prior to that date. At the administrative hearing, the medical expert testified that while he originally thought that plaintiff's polyneuropathy might equal Listing 11.14, he opined that this was not the case because plaintiff felt "great" after the ablation procedure, the doctors "were happy with the outcome" of the procedure , and her condition "showed all normal levels" after the procedure which was an improvement over her pre-existing condition (AR 46).[3] The medical expert later testified that "[plaintiff's] testimony is consistent with polyneuropathy of all four extremities and carpal tunnel syndrome and the so-called cervical brachial syndrome" (AR 48).

The ALJ summarized the medical expert's testimony as follows:

> At the hearing, Dr. Carl Leigh, a medical expert, testified that the claimant's polyneuropathy does not reach listing level. I agree. Polyneuropathy does not meet listing 11.14 since there is no medical evidence of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements or gait and station.

---

[3] The court notes that the medical expert referred to this listing as "11.4" (AR 46). However, the record reflects that the listing under discussion was Listing 11.14 (polyneuropathies) and not Listing 11.4 (central nervous system vascular accident) (AR 17).

(AR 17).

The ALJ's characterization of the medical expert's testimony, i.e., that plaintiff's "polyneuropathy does not reach listing level," is not entirely accurate. While the medical expert concluded that plaintiff did not meet the requirements of Listing 11.14, this conclusion was based upon the successful ablation procedure performed on May 29, 2009. The medical expert's testimony indicates that prior to May 29, 2009, plaintiff's condition was equal to Listing 11.14, which, in turn, could lead to the conclusion that plaintiff was disabled for as much as two years (i.e., from the alleged onset date of May 8, 2007 through May 29, 2009). Because plaintiff was insured for DIB during this two-year period, the ALJ should have clarified the medical expert's testimony to determine if and when her condition was equal to Listing 11.14. While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning," *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the ALJ did not address medical expert testimony which, on its face, suggested that plaintiff met the requirements of Listing 11.14 prior to the May 29, 2009 ablation procedure. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should evaluate whether plaintiff was disabled under Listing 11.14 during a closed period which ended on May 29, 2009.[4]

---

[4] Plaintiff also contends that the ALJ did not address a "blood disorder." Plaintiff's Brief at p. 9. In this regard, plaintiff refers to a blood condition which "required blood infusions as often as two times per week." *Id.* However, plaintiff's citation to the record (AR 199), does not support this claim. *Id.* While plaintiff may be referring to intravenous calcium infusions which she needed for three months, the medical expert testified that this calcium deficit was corrected with oral supplements after the infusions (AR 44-45). Plaintiff's cryptic reference to a blood disorder does not present an issue for review. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . .

        **B.**    **Is there substantial evidence to support the Commissioner's determination that the claimant's neurological problems were not disabling?**

Plaintiff contends that she suffered neurological symptoms following the ablation. Plaintiff's Brief at pp. 13-14. Plaintiff points out that an EMG performed after the ablation procedure indicated that her neurological condition had worsened. *Id.* This EMG, performed by Gavin Awerbuch, M.D. on September 10, 2009, indicated that plaintiff had mild to moderate degree of polyneuropathy, bilateral lumbago and cervico-brachial syndrome at a mild level, and bilateral "CTS" at a mild level (AR 848)[5]. Dr. Awerbuch noted that plaintiff's "condition has deteriorated from her previous exam" of December 11, 2008, which found a mild degree of polyneuropathy (AR 831, 848). Plaintiff notes that the medical expert agreed that the EMG "indicated that there was a deterioration in the condition from the prior EMG" (AR 47). Plaintiff's Brief at p. 14.[6] Plaintiff also states that this test is consistent with the opinions of plaintiff's treating physician, Shannon Wiggins, M.D., who referred to radiculitis, lumbago, back disorder, and on going muscle spasm. *Id.* However, plaintiff does not cite any particular treatment notes nor does she address the limitations found by Dr. Wiggins; rather she merely cites three groups of exhibits 11F, 16F and 21F, which consist of 82 pages of medical records. *Id.*[7]

---

. . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

[5] Plaintiff's brief incorrectly cites the September 2009 EMG as appearing on "AR 875." *See* Plaintiff's Brief at p. 14.

[6] Plaintiff's brief incorrectly cites the medical expert's opinion as appearing on "AR 57." *See* Plaintiff's Brief at p. 14.

[7] The court notes that plaintiff also refers to two records at "AR 940" and "AR 945"; however, there are no such pages in the administrative record which consists of 914 pages.

The ALJ addressed the September 2009 EMG by stating that the test "indicated mild bilateral lumbago" (AR 17). Then, the ALJ summarily dismissed Dr. Wiggins' opinions stating:

> I give little weight to the treating physician's (Dr. Wiggins) opinion for less than sedentary work since it is not supported by the medical facts and findings in the record, namely consistently normal musculoskeletal and neurological examination findings discussed above, and is inconsistent with the record as a whole (16F).

(AR 21). The opinions referenced by the ALJ are not actually those of Dr. Wiggins, but those of J. Eichmeier as set forth in a "Medical assessment to do work-related activities (physical)" dated May 25, 2009 (AR 710-13). According to defendant, the author of this opinion is "Dr. Wiggins' associate, Dr. James Eichmeier." Defendant's Brief at p. 9, fn. 5.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human*

9

*Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).

Here, the ALJ failed to articulate good reasons for not crediting the opinion of a treating source, which the ALJ mis-identified as Dr. Wiggins. Assuming that the May 25, 2009 medical assessment was written by another doctor in Wiggins' practice, the ALJ does not address any specific portion of the opinion, simply stating that the opinion found that plaintiff can perform "less than sedentary work." In addition, while the ALJ states that the opinion is not supported by the record, due to plaintiff's "consistently normal . . . neurological examination findings," she does not address the September 2009 EMG which found that plaintiff's polyneuropathy was mild to moderate and had deteriorated since December 2008. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the opinions expressed in the May 29, 2009 Medical Assessment (AR 710-13).

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence six of 42 U.S.C. § 405(g). On remand, the Commissioner should evaluate whether plaintiff was disabled under Listing 11.14

during a closed period which ended on May 29, 2009 and should re-evaluate the opinions expressed in the May 29, 2009 Medical Assessment (AR 710-13).


Dated:  May 31, 2012                                          /s/ Hugh W. Brenneman, Jr.
                                                              HUGH W. BRENNEMAN, JR.
                                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).